UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID BALL                                                                    Plaintiff

v.                                                      Civil Action No. 3:22-cv-184-RGJ

LABORATORY CORPORATION OF                                         Defendant
AMERICA

* * * * *

## MEMORANDUM OPINION & ORDER

This case comes before the Court on a series of motions. Defendant Laboratory Corporation of America ("Defendant") moves to introduce video deposition trial testimony [DE 26], to strike Plaintiff David Ball's ("Plaintiff") punitive damages disclosures [DE 27], to exclude the testimony of Plaintiff's expert witness, Dr. Moskal [DE 28], and to exclude the testimony of Plaintiff's expert witness, Dr. Muppavarapu [DE 29]. Briefing is complete and the matters are ripe. [DE 34; DE 35; DE 32; DE 36; DE 33; DE 37]. For the reasons below Defendant's unopposed motion to introduce video deposition trial testimony [DE 26] and Defendant's motion to strike Plaintiff's punitive damages disclosures [DE 27] are **GRANTED**; Defendant's motion to exclude the testimony of Dr. Moskal [DE 28] is **DENIED** in part and **GRANTED** in part; and Defendant's motion to exclude the testimony of Dr. Muppavarapu [DE 29] is **DENIED**.

## BACKGROUND

On February 25, 2021, Plaintiff passed out after getting his blood drawn by phlebotomist Keiyuana Venson ("Venson") in one of Defendant's labs. [DE 1-2, Compl. at 11]. Plaintiff alleges that he sustained two spinal fractures when he fainted in the phlebotomy chair. [*Id*.]. He subsequently brought this action alleging that Labcorp's phlebotomists were negligent in drawing

1

his blood and monitoring him afterward, and that their negligence caused his injuries.  [*Id.*].  He also alleges that Labcorp is vicariously liable for the actions of its phlebotomists.  [*Id.*].

## DISCUSSION

### I.    Motion for Leave to Use Video Trial Deposition of Dr. Henry Tutt

Federal Rule of Civil Procedure 32(a)(4) governs the admission of unavailable witness deposition testimony at trial.  "The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met." *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990).  Rule 32 allows for depositions in lieu of live testimony if a court finds:

> . . . (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
> (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment; . . . or
> (E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. R. Civ. Proc. 32(a)(4).  "How exceptional the circumstances must be under Rule 32(a)(3)(E) is indicated by its companion provisions.  These authorize use of a deposition in lieu of live testimony only when the witness is shown to be unavailable or unable to testify because he is dead; at a great distance; aged, ill, infirm, or imprisoned; or unprocurable through a subpoena." *Allgeier*, 909 F.2d at 876.  In the Sixth Circuit, a physician's full schedule is not automatically an "exceptional circumstance" under Rule 32(a)(4)(E).  *Id*. Other courts have followed suit, holding that having to cancel patient appointments is not an "exceptional circumstance." *See Whitlock v. Allstate Fire & Cas. Ins. Co*., 635 F. Supp. 3d 371, 381 (E.D. Pa. 2022) ("[W]e cannot find it 'exceptional' for a physician to have a full patient load. Indeed, having a full work schedule is not a coincidence limited to physicians."); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 963–64 (10th Cir. 1993) (finding medical expert's "extremely busy" schedule was not an exceptional

circumstance under Rule 32(a)(3)(E)); *Good v. BioLife Plasma Servs., L.P.*, 605 F. Supp. 3d 947, 957 (E.D. Mich. 2022) ("Although Dr. Zimostrad likely has a busy treatment schedule, the Sixth Circuit has held that doctors are not 'automatically unavailable' for trial due to the scheduling demands of their occupation.")(quoting *Allgeier*, 909 F.2d at 876).

Defendant has not alleged that Dr. Tutt is more than 100 miles from the courthouse[1] or that he cannot testify due to "age, illness, infirmity, or imprisonment." Fed. R. Civ. P. 32(a)(4)(B)-(C). Instead, they only assert that exceptional circumstances should apply because Dr. Tutt "works a full-time schedule at the clinic, regularly working Monday through Friday, and regularly supervis[ing] five physician assistants in their clinical practice in addition to his IME and records review work." [DE 26 at 224]. Defendant has not met the Rule 32 standard because a doctor's busy schedule does not constitute an "exceptional circumstance" under the law of this circuit. *Allgeier*, 909 F.2d at 876. Nevertheless, Plaintiff does not object to Defendant's request. As a result, the Court grants Defendant's unopposed motion to use video deposition testimony of Dr. Tutt at trial.

## II.     Motion to Strike Plaintiff's Punitive Damages Disclosures

Defendant argues that Plaintiff's request for punitive damages should be stricken for failure to provide notice of it in their complaint, and alternatively, that it fails as a matter of law.

### A.     Notice

In a diversity action, federal courts apply state substantive law and federal procedural law.[2] *See Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014). Pleading is governed by Rule 8 of the Federal Rules of Civil Procedure. Under Rule 8, a complaint must contain "a demand for

---

[1] The listed address for Dr. Tutt is less than 100 miles from the courthouse in Louisville, Kentucky. [DE 26-1 at 227].

[2] The parties' references to the Kentucky pleading standard are irrelevant. Once this action was removed to federal court, it became subject to federal procedural rules.

the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).  Punitive damages—which are not generally considered special damages—do not have to be specifically pleaded.  *See Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 870 (E.D. Mich. 2007) ("Punitive damages are not special damages and therefore need not be pleaded with specificity under Rule 9(g)."); *Schexnayder v. Bonfiglio*, 167 Fed. App'x. 364, 367 (5th Cir. 2006) (holding defendants received ample notice of punitive damages even though they were not mentioned in the complaint); *but see Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd*., 792 F. Supp. 1566, 1579 (S.D.Fla. 1992) (treating punitive damages as special damages under Rule 9).  The purpose of the federal pleading standard is to provide defendants fair notice of the claims against them—a fundamental requirement of constitutional due process.  *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("Rule 8 is commonly understood to embody a regime of 'notice pleading' where technical pleading requirements are rejected in favor of an approach designed to reach the merits of an action.") (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002)); *Michaels Bldg. Co. v. Ameritrust Co., N.A*., 848 F.2d 674, 679 (6th Cir. 1988) ("[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading.").

In Kentucky, punitive damages may be awarded upon a showing of gross negligence. *Williams v. Wilson*, 972 S.W.2d 260, 262–65 (Ky. 1998).  Even if a claim for punitive damages is dismissed before trial, a plaintiff "may still recover punitive damages should the evidence support such a finding.  To do so, [the] [p]laintiff must put forth sufficient allegations supported by evidence at the summary-judgment stage or proved at trial that would warrant a punitive-damages instruction." *Archey v. AT&T Mobility, LLC*, 17-cv-91, 2017 WL 6614106, at *4 (E.D. Ky. Dec.

26, 2017).  In *Hampton v. Bob Evans Transp. Co.*, a plaintiff who did not assert an independent claim for punitive damages was still permitted to seek them as a remedy for their gross negligence claim.  No. CV 6: 18-143-DCR, 2018 WL 3213609, at *2 (E.D. Ky. June 29, 2018).

In this case, Plaintiff did not include a specific request for punitive damages in his Complaint.  [DE 1-2 at 12].  He did, however, include a calculation of punitive damages in his Rule 26 disclosures [DE 27-2 at 271] and in his response to Defendant's interrogatories [DE 1-2 at 37].  Defendant does not point to any federal rule requiring a request for punitive damages to appear in the complaint.[3] Just because complaints "may include relief in the alternative or different types" does not mean that they must do so.  Fed. R. Civ. P. 8(a)(3).  Plaintiff's complaint contained a demand for relief—albeit not for punitive damages—and satisfied the Rule 8 pleading standard.

Defendant also claims that they lacked notice of punitive damages because the Complaint did not allege gross negligence.  This case is presents reverse facts to those in *Hampton*.  2018 WL 3213609, at *2.  While the plaintiff's allegation of gross negligence was sufficient to provide notice of punitive damages in that case, here, Plaintiff's requests for punitive damages in their Rule 26 disclosures and interrogatory responses were sufficient to provide notice of their claim of gross negligence.  The outcome is the same in both situations: the defendant was on notice of the plaintiff's intent to seek punitive damages under the Kentucky gross negligence standard.  Defendant cannot plausibly claim at this late stage that they lacked sufficient notice of Plaintiff's intent to pursue punitive damages.

---

[3] If Defendant wished to challenge the sufficiency of the pleadings, the proper method would have been a motion to dismiss for failure to state a claim.  *See Jones v. Wiseman*, No. 218CV02197SHLDKV, 2019 WL 4060885 (W.D. Tenn. May 16, 2019).

B. *Summary Judgment*

Defendant argues that even if Plaintiff properly pleaded punitive damages, the claim must fail for lack of evidence. [DE 27 at 242-45]. The Court construes this as a motion for partial summary judgment.[4]

i. <u>Standard</u>

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts showing a material issue of fact for trial. *Anderson*, 477 U.S. at 247–48. "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). The non-

---

[4] While not identified as a motion for summary judgment, Defendant complied with the time limits for dispositive motions.

moving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Instead, the non-moving party must show a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence. . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A)–(B); *see also Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014).   "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

    ii.   <u>Analysis</u>

       Kentucky law provides two avenues for a plaintiff to recover punitive damages: one statutory and one under the common law.  *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870 (Ky. 2016). The parties dispute whether Plaintiff has met either of these standards.  [DE 27 at 244; DE 34 at 412].   Regardless of the standard employed, Plaintiff is attempting to hold Defendant vicariously liable for the actions of its employee phlebotomists, so the Court must look to Kentucky vicarious liability law.  *See Griffey v. Adams*, No. 5:16-CV-00143-TBR, 2018 WL 3118186, at *2 (W.D. Ky. June 25, 2018).

       Kentucky statute KRS 411.184(3) "expressly prohibits the assessment of punitive damages against an employer for the conduct of an employee or agent, unless the offensive conduct was (1) authorized by the employer; (2) anticipated by the employer; or (3) ratified by the employer." *Saint Joseph*, 487 S.W.3d at 870 (citing *Univ. Med. Ctr., Inc. v. Beglin*, 375 S.W.3d 783, 793–94 (Ky. 2011)).   Authorization refers to "pre-approval of the conduct." *Beglin*, 375 S.W.3d at 793. "[R]atification is, in effect, the after the fact approval of conduct, much as authorization is the before the fact approval of the conduct." *Beglin*, 375 S.W.3d at 794.  Ratification may be implied

by the employer's conduct but requires both "1) an after-the-fact awareness of the conduct; and 2) an intent to ratify it." *Saint Joseph*, 487 S.W.3d at 875.  The final exemption exists when an employer anticipates the employee's conduct.  "[W]here the conduct at issue consists of 'a gross deviation from well-established duties and policies' put in place to prevent a particular tortious act, an employer would not have been able to reasonably anticipate that tortious act." *Griffey*, 2018 WL 3118186, at *3 (citing *Beglin*, 375 S.W.3d at 794).

Plaintiff failed to address the issue of vicarious liability in his response to Defendant's motion to strike.  [*See* DE 34].  There is no indication in the record that Defendant authorized before the fact, or ratified after the fact, Venson's or Gonzalez's actions.  Plaintiff has not made a showing that Defendant was even aware of the incident, much less that they intended to ratify it.

Plaintiff fares no better on the anticipation exception.  He specifically alleges that Venson's and Gonzalez's actions were grossly negligent because they deviated from Defendant's established policies:

> [t]he undisputed evidence in this case is that phlebotomist Venson and Gonzalez failed to follow basic Labcorp policy, medicine, and common sense by failing to remain with David, failing to secure the position of David's body, failing to lower David's head towards his knees, and failing to communicate with other employees that assistance was needed.

[DE 34 at 412].  The fact that Labcorp has established policies and training foreclosed their reasonable anticipation of this type of negligent conduct.  *Beglin*, 375 S.W.3d at 794.  Further, no allegations have been made, and no evidence has been produced, which would suggest that either Venson or Gonzalez exhibited a previous pattern of similarly negligent conduct from which Defendant should have reasonably expected such conduct to reoccur.  Because there is no dispute as to any material fact surrounding Defendant's involvement or knowledge, no reasonable jury could find that Defendant authorized, ratified, or should have anticipated the negligent conduct at

issue.  Therefore, under Kentucky law, Defendant cannot have punitive damages assessed against it for the tortious conduct of its employees.  *See* KRS 411.184(3).

### III.  *Daubert* **Motions**

#### A.  *Standard*

The admissibility of expert testimony is set forth in Rule 702 of the Federal Rules of Evidence.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharm., Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant."  *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir.2002) (alteration and internal quotation marks omitted).  "Under Rule 702 of the Federal Rules of Evidence, 'a proposed expert's opinion is admissible . . .  if the opinion satisfies three requirements.  First, the witness must be qualified by knowledge, skill, experience, training, or education.  Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue.  Third, the testimony must be reliable.'"  *Burgett v. Troy-Bilt LLC*, 579 Fed. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)).

The first hurdle an expert witness must clear is the determination of whether they have the "knowledge, skill, experience, training, or education" necessary to qualify as an expert. Fed. R. Evid. 702. The Court "do[es] not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Burgett*, 579 Fed. App'x at 376 (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at * 33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge."). "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact." *Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). The preferred means of attacking weak evidence is "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

After an expert is deemed qualified, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v. Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013) (quoting *Daubert*, 509 U.S. at 597). To assist with this determination, the Supreme Court in *Daubert* laid out several factors for the

courts to consider.[5]  *Daubert*, 509 U.S. at 592–594.  Courts have "stressed, however, that *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience."  *First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation") (internal citations omitted).  "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."  *Id.*

  B. *Analysis*

   i. <u>Dr. Moskal</u>

Defendant claims that Michael J. Moskal, M.D. ("Dr. Moskal") is not qualified to opine on the phlebotomists' breach of the standard of care.  [DE 28 at 292].  They also argue that Dr. Moskal lacks a reliable foundation for his opinions about Plaintiff's future medical expenses.

Dr. Moskal is a board-certified orthopedic surgeon and completed his orthopedic surgery residency at Northwestern Medical School in 1966. [DE 17-2 at 128].  His medical education and training included performing venipunctures.  [DE 32-1 at 351].  He has not performed a blood

---

[5] The *Daubert* factors include "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (quoting *Daubert*, 509 U.S. at 592–594).

draw for fifteen to twenty years but has witnessed blood draws throughout his career.  [*Id.*]. He also has experience with patients experiencing fight or flight responses.  [*Id.* at 352].

Though Dr. Moskal may lack knowledge and experience in the field of phlebotomy, Defendant's focus on this field is too narrow for determining expert qualification in this case.  "A witness with general qualifications in a field can be properly qualified as an expert; the lack of experience in a more specialized area within the field goes to the weight and not admissibility of the expert's testimony." *Ross v. Am. Red Cross*, No. 2:09-CV-905, 2012 WL 1656995, at *4 (S.D. Ohio May 10, 2012), *aff'd*, 567 F. App'x 296 (6th Cir. 2014) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288 (6th Cir. 2007)).  Just because a witness with more expertise and experience in phlebotomy may be able to formulate more informed opinions does not mean that an otherwise qualified witness with less experience cannot also offer relevant and reliable testimony.  *See Barreto*, 268 F.3d at 333 (describing the plaintiff's description of the "central issue" for trial as "unduly narrow"; the expert's unfamiliarity with some aspects of the subject at hand informed weight and not admissibility of his testimony).  Dr. Moskal's venipuncture training and experience is dated, but his medical education and decades of patient care provide him with specialized "knowledge, skill, experience, training, or education" regarding the circumstances which may have led to Plaintiff's injuries.  Fed. R. Evid. 702.  He may also opine that the phlebotomists breached the standard of care in performing the blood draw.  Defendant's argument that Dr. Moskal lacks practical experience specific to blood draws go to his opinion's weight—not its admissibility.  *See Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).  Defendant retains ample latitude to explore Dr. Moskal's shortcomings on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Defendant also claims that Dr. Moskal's opinion about future medical care and related expenses lacks a reliable foundation.  [DE 28 at 293].  Dr. Moskal's opinion was formulated after reviewing Plaintiff's medical records, including x-rays, and evidence of the incident.  [DE 17-1 at 104–26].  Taken together, this is a sufficient foundation from which Dr. Moskal could formulate his medical opinions about Plaintiff's future treatment requirements.  His opinions regarding the cost of such future treatment, however, lack any reliable basis.  His expert disclosure lacks any basis for his cost calculations.  [DE 17-1 at 125].  Further, his deposition revealed that he is not qualified to opine on the cost of medical care:

> **Q:** Do you -- can you give an opinion on a range of future medical bills that David Ball may face in the future as a result of this February 25, 2021 injury?
> **A:** You know, it comes with a caveat that cost of healthcare is going up and up and up. So to sort of --I can't sort of say, gee, this is the rate that it's going to go. And if he does something in ten years, it's going to be more than if he does something tomorrow, so to speak. But yeah, roughly 10-, $11,000 worth of -- just shy of $11,000. And engaging with physical therapy -- you know, we look in the span of a - he was -- he was born in 1970, so 50 when this happened. Yeah, it's up to about $100,000. Realizing that I'm not a hospital administrator, I don't bill for hospitals, but I know what people get charged. I sometimes see their bills. They look at this and they're like, wow, look at this. And so yeah, I suppose someone could -- could take issue with that number. . .
> **Q:** Is it your opinion within a reasonable degree of medical probability, Dr. Moskal, that David Ball may be facing a range of $10,000 to $100,000 of surgeries needed in future medical bills?
> **A:** Yes.

[DE 28-3, Dr. Moskal Depo. at 309–10].  That Dr. Moskal "sometimes see[s] [people's] bills" [*id.*] does not afford him the "knowledge, skill, experience, training, or education" necessary to form an expert opinion on the cost of medical care.  Fed. R. Evid. 702.  Nor does his occupation as a physician necessarily give him knowledge of medical care costs—especially considering his testimony that he does not bill hospitals.  [DE 28-3 at 309-10].  If an expert witness is not qualified

a court need not reach the reliability or relevance of their testimony.  Fed. R. Evid. 702(a).  Because Dr. Moskal lacks qualification in this field, his opinions about Plaintiff's future medical costs do not meet the Rule 702 standard for expert testimony.

    ii.    <u>Dr. Muppavarapu</u>

Defendant also moves to exclude the testimony of Plaintiff's expert witness, Raghuveer Muppavarapu, M.D. ("Dr. Muppavarapu"), because he is not qualified to express an opinion about the standard of care for blood draws.  [DE 29 at 318].

Dr. Muppavarapu is a board-certified orthopedic surgeon.  [DE 33-1 at 379].  He performs blood draws "at least once per month" in the course of his practice.  [*Id*. at 381].  Additionally, he has experience treating patients who have passed out during blood draws.  [*Id*. at 382–83]. While he may not specialize in phlebotomy, as discussed above, "the lack of experience in a more specialized area within the field goes to the weight and not admissibility of the expert's testimony." *Ross*, 2012 WL 1656995, at *4.  Dr. Muppavarapu's medical education, training, and professional experience qualify him to provide an expert opinion about the standard of care for blood draws. Any weaknesses regarding his experience level or expert report can be sufficiently attacked on cross-examination.  *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## CONCLUSION

For these reasons, **IT IS ORDERED** that:

    1)    Defendant's motion to introduce video deposition trial testimony [DE 26] is **GRANTED.**

2)   Defendant's motion to strike Plaintiff's punitive damages disclosures [DE 27] is **GRANTED**.

3)   Defendant's motion to exclude the testimony of Dr. Moskal [DE 28] is **DENIED** in part and **GRANTED** in part, and

4)   Defendant's motion to exclude the testimony of Dr. Muppavarapu [DE 29] is **DENIED**.

November 1, 2023

Rebecca Grady Jennings, District Judge
United States District Court

cc:      Counsel of record